IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

TRICIA PARROTT-BURNEY,       )
                             )
    Plaintiff,                )
                             )
vs.                          )        Case No.  CIV-14-1286-HE
                             )
CAROLYN W. COLVIN, Acting    )
Commissioner Social Security )
Administration,              )
                             )
    Defendant.                )

## REPORT AND RECOMMENDATION

Tricia Parrott-Burney (Plaintiff) filed this action for judicial review of the Defendant Acting Commissioner of Social Security's (Commissioner) final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income. *See* 42 U.S.C. § 405(g). United States District Judge Joe Heaton referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3), and Fed. R. Civ. P. 72(b).

After a careful review of the administrative record (AR), the parties' briefs, and the relevant authority, the undersigned recommends the entry of judgment affirming the Commissioner's final decision. *See* 42 U.S.C. § 405(g).

**I.      The Commissioner's final decision.**

The Social Security Act defines "disability" as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Plaintiff alleges disability as of February 9, 2011, AR 35, at the age of forty. *Id.* at 157, 161.

Adhering to the regulatory process adjudicators must follow to determine if a claimant is disabled within the meaning of the Act, the ALJ found Plaintiff: (1) is severely impaired by lumbar degenerative disc disease, bipolar I disorder, and anxiety; (2) has the residual functional capacity (RFC) to perform the exertional demands of all levels of work but is limited to work where she can change position after thirty minutes at her workstation without break and where she will be required to understand, remember, and carry out only simple and detailed instructions, have only minimal and superficial interaction with coworkers and supervisors, and never interact with the public;[1] (3) can perform jobs existing in the national economy; and thus (4) is not disabled. AR 13-20; *see* 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the sequential process).

The Social Security Administration's Appeals Council found no reason to

---

[1]   Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

review that decision, and the ALJ's decision became the Commissioner's final decision. AR 1-5.

## II. Analysis of the Commissioner's final decision.

### A. Review standards.

The court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

### B. Claimed error.

Plaintiff contends the Commissioner's final decision is not supported by substantial evidence because (1) the ALJ violated the treating physician rule by failing to provide specific and legitimate reasons for rejecting the medical source opinion provided by Haisam Al-Khouri, M.D. and (2) the ALJ failed to properly

3

evaluate Plaintiff's pain when assessing Plaintiff's RFC. Doc. 13, at 6-11, 11-13.

### C. Whether the ALJ properly rejected the opinions of Dr. Al-Khouri.

#### 1. Treating physician rule.

The ALJ accurately found that the record includes two statements from medical personnel who treated Plaintiff, one dated February 8, 2013, from Dr. Al-Khouri, an acceptable medical source. AR 17. An ALJ must give a treating physician's medical opinion "controlling weight" if it is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques'" and is not "'inconsistent with the other substantial evidence in the case record.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2). Even if the ALJ determines at this first step of the two-stage inquiry that a treating physician's medical opinion is not entitled to "controlling weight, it is still entitled to deference; at the second step of the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the [applicable] regulations for this purpose, for the weight assigned." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). These factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment

4

relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1331.

"[T]he ALJ's findings must be sufficiently specific to make clear to any subsequent reviewers the weight he gave to the treating source's medical opinion and the reason for that weight." *Id.* (alteration and internal quotation marks omitted). The ALJ need not "apply expressly" every factor because "not every factor for weighing opinion evidence will apply in every case." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (alteration omitted). "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Watkins*, 350 F.3d at 1301 (internal quotation marks omitted).

### 2. Treatment of record with Dr. Al-Khouri.

#### a. February 2012.

On February 10, 2012, Plaintiff began a six-month treatment plan with HOPE Community Services. AR 574-90. Besides receiving individual and group psychotherapy counseling and rehabilitative treatment, Plaintiff's plan included one fifteen minute session per month for "Pharmacological Management." *Id.*

5

at 585.  The first record of this service is dated February 18, 2012, 10:50 a.m. - 11:10 a.m., when Ahmed Abdelaziz, M.D., saw Plaintiff for medication management/review.  *Id.* at 571-73.[2]  Plaintiff (1) complained of long-standing anxiety, depression, and mood swings; (2) mentioned episodes of irritability, increased energy, a decreased need for sleep; rapid speech; racing thoughts, and anxiety; (3) "endorsed episodes of depression where has trouble falling and staying asleep, lost interest in things he liked to do"; (4) reported "feeling hopeless and helpless"; (5) reported "guilt feelings"; (6) reported she "[f]eels sad on most days"; (7) reported poor energy, concentration, and a fluctuating appetite; (8) reported daily panic attacks with symptoms of sweating, palpitation, shortness of breath, feeling anxious, feeling fearful, and chest pains; and (9) stated that "[a]t times she hears voices like a conversation."  *Id.* at 571.  On that day, "she denied SI/HI/AH/VH . . . ."  *Id.*[3]  The diagnosis provided was Bipolar I disorder, most recent episode (or current) mixed-severe and Anxiety state, unspecified.  *Id.* at 573.  Dr. Abdelaziz' single objective finding was an anxious mood.  *Id.*

---

[2]  The record contains a duplicate of this report.  AR 468-70.

[3]  "SI/HI" is an abbreviation for Suicidal Ideation/Homicidal Ideation; "AH/VH" is an abbreviation for Auditory Hallucinations/Visual Hallucinations.  *See* http://www.medilexicon.com.

6

### b. March 2012.

The first record completed by Dr. Al-Khouri is dated March 19, 2012, 11:10 a.m. - 11:12 a.m., for Plaintiff's medication management and/or review. *Id.* at 568-70. Dr. Al-Khouri noted (1) a medication change; (2) Plaintiff's report of medication compliance; and (3) "[d]oing ok." *Id.* at 568. He made no objective findings. *Id.* at 570.

### c. April 2012.

Dr. Abdelaziz saw Plaintiff for her pharmacological management on April 16, 9:51 a.m. - 9:52 a.m. Dr. Abdelaziz (1) changed Plaintiff's medication; (2) documented her reported medication compliance; and (3) noted "[d]oing good on the medications. Denied SI/HI/AH/VH. Reported some ringing in ears due to risperdal but wants to continue taking it." *Id.* at 565, 565-67. There were no objective findings. *Id.* at 567.

### d. May 2012.

There are no reports of record for May, 2012.

### e. June 2012.

Dr. Al-Khouri changed Plaintiff's medications when he saw her on June 26, 2012, 5:43 p.m. - 5:44 p.m. *Id.* at 562-64. He checked a box indicating Plaintiff's report of the side effects listed below. *Id.* at 562. The only addition to the form, however, was "[i]ncreased Risperdal to 3 mg[.]" *Id.* Dr. Al-Khouri

7

made no objective findings. *Id.* at 564.

### f. July 2012.

Similarly, when Dr. Al-Khouri saw Plaintiff on July 26, 2012, 3:55 p.m. - 4:00 p.m., he once again changed her medications; once again indicated Plaintiff's report of the below-listed side effects, this time noting "[d]oing okay"; and, once again, made no objective finding. *Id.* at 559, 559-61.

### g. August 2012.

Dr. Al-Khouri provided Plaintiff's pharmacological management service on August 30, 2012, 4:03 p.m. - 4:04 p.m. *Id.* at 604-05. He indicated that Plaintiff reported side effects, noting "[c]lient doing well [b]ut having shakes" and adding Vistaril for "shakiness/anxiety." *Id.* at 604. He further indicated Plaintiff "does not appear compliant with medications." *Id.* He made objective findings: Plaintiff's appearance, speech, affect, judgment, cognition, thought, delusions, hallucinations, attitude, and insight were all normal; her mood was anxious. *Id.*

### h. September 2012.

HOPE Community Services proposed a second six-month treatment plan for Plaintiff on September 27, 2012. *Id.* at 606-19. The plan again included one monthly fifteen minute session for pharmacological management. *Id.* at 616. Dr. Al-Khouri saw Plaintiff that same date, 4:08 p.m. - 4:09 p.m. *Id.* at 602-03.

8

She "reported being stable on medications" with "[n]o problems reported." *Id.* at 602. Dr. Al-Khouri assessed her mental status: "[f]air grooming and hygiene, fair eye contact, normal speech, euthymic mood, full range of affect [and n]o SI/HI/AH/VH." *Id.* All objective findings were normal. *Id.*

### i. October 2012.

When Dr. Al-Khouri saw Plaintiff on October 25, 2012, 3:03 p.m. - 3:04 p.m., for pharmacological management, he noted Plaintiff "[f]eels like her lows are getting lower" and "[c]ompletely isolated herself in her room." *Id.* at 630. He increased her dosage of Wellbutrin. *Id.* Objectively, all findings were normal except for mood, which Dr. Al-Khouri characterized as "irritable." *Id.*

### j. November 2012.

On November 26, 2012, 11:15 a.m. - 11:16 a.m., Dr. Al-Khouri found Plaintiff did not appear to comply with medications and, in response to her complaint "of manic getting worse," increased her risperdal dosage. *Id.* at 628. Objectively, he labeled Plaintiff's mood as "anxious" and "irritable"; all remaining findings were normal. *Id.*

### k. December 2012.

There are no reports of record for December, 2012.

### l. January 2013.

Dr. Al-Khouri saw Plaintiff on January 28, 2013, 2:46 p.m. - 2:47 p.m. *Id.*

9

at 666-67. Plaintiff "reported being stable on medications" with "[n]o problems reported." *Id.* at 666. He assessed her mental status: "[f]air grooming and hygiene, fair eye contact, normal speech, euthymic mood, full range of affect [and n]o SI/HI/AH/VH." *Id.* Objectively, Dr. Al-Khouri found Plaintiff "normal" in every category. *Id.*

### 3. Dr. Al-Khouri's medical source statement.

Just eleven days later, Dr. Al-Khouri completed a medical source statement of Plaintiff's ability to perform work-related mental activities. *Id.* at 669-71. The ALJ aptly detailed the doctor's opinions:

> Dr. AI-Khouri assigns marked limitations in most areas of mental functioning. He states that the claimant's illness affects her ability to focus and concentrate, and her anxiety blocks her ability to think and remember things and instructions. He states that her illness impairs her ability to make decisions and her judgment. Dr. AI-Khouri states that the claimant hears voices, has visual hallucinations, and has paranoia that affects her interactions with others. The treating psychiatrist said, "She cannot mentally function in general." He states that the claimant's diagnoses are bipolar I disorder, mixed with psychotic features, and posttraumatic stress disorder due to assault and physical abuse. He states that she has mood swings, irritability, racing thoughts, flight of ideas, decreased attention and concentration, easy distractibility, impulsivity, hears voices, visual hallucinations, sees people who are not there, and paranoia. Dr. AI-Khouri adds that she also has flashbacks, intrusive thoughts, and panic attacks because she was assaulted by her ex-husband.

*Id.* at 17-18.

### 4. The ALJ properly rejected the opinions of Dr. Al-Khouri.

The ALJ "note[d] that the treating notes of . . . Dr. AI-Khouri do not contain findings consistent with [his] statements. Instead, [his] treating notes report stability and few abnormal findings upon examinations other than some anxiety and isolation . . . ." *Id.* at 18. She found his statements were "inconsistent with the treating records and notes; therefore, they have been given no weight." *Id.* She further noted that "[m]any of the things mentioned in the medical statement[] are not mentioned in any treating note . . . of Dr. Al-Khouri." *Id.*

The undersigned's explication of Dr. Al-Khouri's treating notes confirms the ALJ's findings. Dr. Al-Khouri's opinions that Plaintiff is markedly limited in all but one work-related mental activity and is unable to "mentally function in general" cannot be reconciled with what were his largely normal findings while Plaintiff was under his care for pharmacological management. *Id.* at 670. The ALJ's stated reasons for rejecting the opinions voiced by Dr. Al-Khouri in his medical source statement, *id.* at 669-71, were specific and they were legitimate.[4] *See Watkins*, 350 F.3d at 1301. Plaintiff fails to demonstrate

---

[4] The ALJ also relied on impartial medical expert Jack E. Bentham, Ph.D.'s written answers to post-hearing interrogatories. AR 10, 13, 14, 17-18, 693-700, 701-08. Following his review of all the evidence of record, Dr. Bentham opined
(continued...)

11

reversible error.

## D. Whether the ALJ properly assessed Plaintiff's credibility.

Plaintiff contends "the ALJ failed to evaluate [Plaintiff's] pain within the requirements of 20 CFR § 404.1529." Doc. 13, at 12. She maintains (1) "her daily activities are very limited"; (2) "her pain was widespread, being present in her cervical & lumbar spine"; (3) "all activity increases her pain levels"; (4) she "used a variety of narcotic pain medications"; (5) "she attempted pain management"; and (6) "her ability to walk, stand and sit was limited" and "[s]he layed or reclined over half the day." *Id.* She points to diagnoses of lumbar disc disease and maintains "the ALJ's findings indicated that Plaintiff had a proven impairment which caused her to 'experience some pain and discomfort' thus satisfying the 'loose nexus' test." *Id.* at 13. She argues that "[a]ccordingly, the ALJ was then required to consider the [§ 404.1529] factors in order to determine from all the evidence – both objective and subjective – whether Plaintiff's pain was so severe as to have been totally disabling." *Id.* She claims "[t]his the ALJ failed to do" and "that without evaluation of these factors, the ALJ's analysis of

---

[4](...continued)
that the restrictions imposed in Dr. Al-Khouri's medical source statement – Exhibit 29F – are not supported by the other evidence of record. *Id.* at 702, 707-08. In assigning no weight to Dr. Al-Khouri's opinions, the ALJ "accept[ed Dr. Bentham's] medical expert testimony that [Dr. Al-Khouri's] medical statement[ is] unsupported by the objective medical record . . . ." *Id.* at 18.

12

pain must fail." *Id.* Finally, Plaintiff states that "pursuant to a Medical Source Statement from Michelle Lange [Plaintiff] would be away from her work station at least 20% of the day to lie down or recline and to deal with the poor functioning she experiences from a lack of concentration." *Id.*

Contrary to Plaintiff's contention that the ALJ failed to evaluate the impact of Plaintiff's pain under § 404.1529, the ALJ specifically acknowledged that "[i]n assessing the claimant's residual functional capacity, consideration must be given to subjective allegations." AR 16. Also – specifically citing 20 C.F.R. §§ 404.1529, 416.929 – the ALJ acknowledged:

> In evaluating subjective complaints, the [ALJ] must give careful consideration to all avenues presented that relate to such matters as:
>
> 1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> 2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> 3. Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> 4. Treatment, other than medication, for relief of pain;
>
> 5. Functional restrictions; and
>
> 6. The claimant's daily activities[.]

*Id.*

And, in keeping with found that mandate, the ALJ made these findings:

> [T]he treating records indicate that the claimant's back and leg complaints are controlled with treatment. Physical examinations report some limitation of back range of motion but normal motor, sensory, and gait function. The pain management treating notes show that the claimant is getting relief from her musculoskeletal pain. Essentially all of 8the treating notes stated that the claimant's medications increase her daily activities and improve the quality of her life. The treating notes say that the claimant is able perform her activities of daily living without difficulty. There is no objective medical evidence to substantiate the claimant's allegations of inability to lift over five pounds, sit longer than 10 minutes, or stand longer than three minutes.

*Id.* at 17.

In addition, the ALJ accounted for the medical source statement referenced by Plaintiff:

> [T]he record contains several statements from medical personnel who treat the claimant. One is from Michele Lange, APRN, CNP, dated January 24, 2013 (Exhibit 27F). It is noted that Ms. Lange is not an acceptable medical source, but her statement and opinion have been considered in accordance with SSR 06-03p. Ms. Lange opined that the claimant could lift only 10 pounds occasionally, and she can sit, stand, or walk two hours without interruption and eight hours total during an eight-hour day. She opined that the claimant could frequently use her hands but only occasionally operate foot pedals and perform postural activities. Ms. Lange said that the claimant was unable to work around unprotected heights, moving machinery, dust, fumes, and other environmental pollutants, and vibrations. She could occasionally operate motor vehicles and work in exposure to humidity and temperature extremes. Ms. Lange opined,
>
>> Is it [sic] likely that the combination of pain and depression would keep Ms. Parrott-Burning away from

>       her workstation at least 20% of the working day to lay
>       or recline and deal with the poor functioning she
>       experiences from a lack of concentration.

*Id.* at 17.[5] The ALJ found "the treating notes of Ms. Lange . . . do not contain findings consistent with [her] statements. Instead, [her] treating notes report stability and few abnormal findings upon examinations other than some . . . limitation of back movement with spasm and tenderness to palpation." *Id.* at 18.

"Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (citation, brackets, and internal quotation marks omitted). An ALJ's credibility findings reflect her consideration of Plaintiff's allegations of disabling symptoms in order to "'decide whether [s]he believe[d] them.'" *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (citation omitted). In making this determination, an ALJ should consider factors such as

>       the levels of medication and their effectiveness, the extensiveness
>       of the attempts (medical or nonmedical) to obtain relief, the
>       frequency of medical contacts, the nature of daily activities,
>       subjective measures of credibility that are peculiarly within the
>       judgment of the ALJ, the motivation of and relationship between the

---

[5]     Plaintiff simply notes the statement. Doc. 13, at 13.

> claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Wilson v. Astrue*, 602 F.3d 1136, 1145 (10th Cir. 2010) (internal quotation marks omitted). But, as long as the ALJ provides the specific evidence she has relied on in assessing a claimant's credibility, "a formalistic factor-by-factor recitation of the evidence" is not required in the Tenth Circuit. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Here, the ALJ, focusing on the effectiveness of Plaintiff's medication and the consistency of her complaints with the objective medical evidence, provided the required evidentiary links. Plaintiff fails to demonstrate reversible error.

## III. Recommendation and notice of right to object.

The undersigned recommends the entry of judgment affirming the Commissioner's final decision.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of Court by September 7, 2015, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make a timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 18th day of August, 2015.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE